Elnorris Stone
#V67067
Folsom State Prison
P.O.Box 950
Folsom, CA. 95763

**FILED**

AUG 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Elnorris Stone,<br><br>          Petitioner,<br><br>V.<br><br>M.C. Kramer, Warden,<br><br>          Respondent. | CASE No. : CV 07 6263 TEH (PR)<br><br>Notice of Motion & Motion for<br>Directed NUNC PRO TUNC |

**TO: THE HONORABLE COURT IN THE ABOVE ENTITLED ACTION PLEASE**

**TAKE NOTICE:** That as soon as this matter may be heard by the court, the above named Petitioner will move for a Directed NUNC PRO TUNC in the above entitled action.

Petitioner is asking that if it proves necessary let the 'new' Petition relate back to the original filing date of Dec. 6 2007, as the original Petiton was dismissed without prejudice.

The Petiton was mailed to the District Court on Dec. 6, 2007 & filed 12/11/2007. Order dismissing case pending resolution & exhaustion in State Court was filed 4/28/08. I recieved the Order on 5/19/08 due to a transfer and change in Prison location. Exhaustion in State Court is now complete (see enclosed denial from California State Supreme Court).

page 1 of 2

Due to the above facts, Petitioner respectfully requests that the Dockett sheet in this case be corrected NUN PRO TUNCT to Dec. 6, 2007, the date the original Petition was filed.

DATE:  7/29/08

Respectfully submitted

petitioner

S160487 |

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ELNORRIS STONE on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

JUL **1 6 2008**

Frederick K. Ohlrich Clerk

_____

Deputy

**GEORGE**

Chief Justice

IN THE UNITED STATES DISTRICT COURT OF THE NORTHERN DISTRICT OF CALIFORNIA.

Elnorris Stone,                )
                               )
            Petitioner,        )        CASE No. : CV 07 6263 TEH (PR)
                               )
                               )
v.                             )
                               )
                               )
M.C. Kramer, Warden.           )

## ORDER

The above-entitled matter, having come before this Court on Date: _____ 2008 upon the Petitioners, Elnorris Stone's Motion for Directed NUNC PRO TUNC, and the Court being duly advised, it is **ORDERD AND ADJUDGED** that the Petitioners Motion is Hereby granted, and the Dockett Sheet in this case be corrected NUN PRO TUNCT to Dec. 6, 2007, the date the original Petition was filed.

**DONE AND ORDERD** in The United States District Court, Northern District Of California this _____ day _____, 2008.

DATED: _____

                                        _____
                                        Thelton E. Henderson
                                        United States District Judge
//
//
//

STATE OF CALIFORNIA
GA-22 (9/92)

# INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE | TO | FROM (LAST NAME) | CDC NUMBER |
|---|---|---|---|
| 7/28/08 | Trust Accounting Office | Stone, E. | V67067 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER BRG-A.001 |
|---|---|---|---|
| B1-C1 | 31U | Bridging Arts in Correction | FROM 0700 – TO 1430 |

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)      N/A

ASSIGNMENT HOURS
FROM — — TO —

**Clearly state your reason for requesting this interview.**

You will be called in for interview in the near future if the matter cannot be handled by correspondence.

I need a Certified Copy of my trust account for the last 6 months and the enclosed

document filled out and returned for mailing to the U.S. District Court as soon

as possible, thank you for your time and attention. God bless you.

Do NOT write below this line. If more space is required, write on back.

INTERVIEWED BY _____     DATE _____

DISPOSITION

1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF CALIFORNIA
9

10   Elnorris Stone

11                              Plaintiff,        CASE NO. CV 07 6263 TEH (PR)

12        vs.                                     PRISONER'S
     M.C. Kramer, Warden,                         APPLICATION TO PROCEED
13                                                IN FORMA PAUPERIS

14                              Defendant.

15

16        I, Elnorris Stone      , declare, under penalty of perjury that I am the plaintiff in

17   the above entitled case and that the information I offer throughout this application is true and correct.

18   I offer this application in support of my request to proceed without being required to prepay the full

19   amount of fees, costs or give security. I state that because of my poverty I am unable to pay the

20   costs of this action or give security, and that I believe that I am entitled to relief.

21        In support of this application, I provide the following information:

22   1.    Are you presently employed?                        Yes ___ No _X_

23   If your answer is "yes," state both your gross and net salary or wages per month, and give the name

24   and address of your employer:

25   Gross: ___ N/A _____        Net: _____ N/A _____

26   Employer: _____ N/A _____

27   _____

28   If the answer is "no," state the date of last employment and the amount of the gross and net salary

1   and wages per month which you received.  (If you are imprisoned, specify the last place of

2   employment prior to imprisonment.)

3   Date of last employment 2001,net wages per month -$1,000

4   Last place of Employment - I.B.E.W. (International Brotherhood

5   of Electrical Workers).

6   2.    Have you received, within the past twelve (12) months, any money from any of the following

7   sources:

8        a.   Business, Profession or                    Yes ___ No _X_

9             self employment

10       b.   Income from stocks, bonds,                  Yes ___ No _X_

11            or royalties?

12       c.   Rent payments?                              Yes ___ No _X_

13       d.   Pensions, annuities, or                     Yes ___ No _X_

14            life insurance payments?

15       e.   Federal or State welfare payments,          Yes ___ No _X_

16            Social Security or other govern-

17            ment source?

18   If the answer is "yes" to any of the above, describe each source of money and state the amount

19   received from each.

20   _____

21   _____

22   3.    Are you married?                               Yes ___ No _X_

23   Spouse's Full Name: ____N/A_____

24   Spouse's Place of Employment: _____N/A_____

25   Spouse's Monthly Salary, Wages or Income:

26   Gross $____N/A_____ Net $_____N/A_____

27   4.    a.    List amount you contribute to your spouse's support:$ _____N/A_____

28         b.    List the persons other than your spouse who are dependent upon you for support

and indicate how much you contribute toward their support. (NOTE: For minor children, list only their initials and ages. DO NOT INCLUDE THEIR NAMES.).

_____ N/A _____

_____

5. Do you own or are you buying a home?          Yes ____ No  X

Estimated Market Value: $ ____ / ____ Amount of Mortgage: $ ____ / ____

6. Do you own an automobile?          Yes ____ No  X

Make ____ / ____ Year ____ / ____ Model ____ / ____

Is it financed? Yes ____ / No ____ / If so, Total due: $ ____ / ____

Monthly Payment: $ ____ / ____

7. Do you have a bank account? Yes __ ✓ No  X (Do not include account numbers.)

Name(s) and address(es) of bank: _____

_____

Present balance(s): $ _____ N/A _____

Do you own any cash? Yes / No / Amount: $ ____ / ____

Do you have any other assets? (If "yes," provide a description of each asset and its estimated market value.)  Yes ____ No  X

_____

8. What are your monthly expenses?

Rent: $ ____ N/A ____          Utilities: ____ N/A ____

Food: $ ____ N/A ____          Clothing: ____ N/A ____

Charge Accounts:

| Name of Account | Monthly Payment | Total Owed on This Acct. |
|---|---|---|
| ____ / ____ | $ ____ / ____ | $ ____ / ____ |
| ____ / ____ | $ ____ / ____ | $ ____ / ____ |
| ____ / ____ | $ ____ / ____ | $ ____ / ____ |

9. Do you have any other debts? (List current obligations, indicating amounts and to whom they are payable. Do not include account numbers.)

1    _____N/A_____

2    _____

3    10.    Does the complaint which you are seeking to file raise claims that have been presented in

4    other lawsuits?  Yes _____ No  X

5    Please list the case name(s) and number(s) of the prior lawsuit(s), and the name of the court in which

6    they were filed.

7    _____N/A_____

8    _____

9        I consent to prison officials withdrawing from my trust account and paying to the court the

10   initial partial filing fee and all installment payments required by the court.

11       I declare under the penalty of perjury that the foregoing is true and correct and understand

12   that a false statement herein may result in the dismissal of my claims.

13

14   7/28/08

15        DATE                              SIGNATURE OF APPLICANT

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORIGINAL**

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  Stone                              Elnorris

        (Last)                         (First)                    (Initial)

Prisoner Number __V-67067__

Institutional Address  **P.O.Box 950, Represa CA. 95671**

==========================================================================

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Elnorris Stone                      Case No. **CV 07 6263 TEH (PR)**
Full Name of Petitioner             (To be provided by the clerk of
                                    court)

      vs.
**M.C.KRAMER, WARDEN**

                                    PETITION FOR A WRIT OF HABEAS CORPUS
Name of Respondent
(Warden or jailor)

==========================================================================

Read Comments Carefully Before Filling In

When and Where to File

     You should file in the Northern District if you were convicted
and sentenced in one of these counties:  Alameda, Contra Costa, Del
Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito,
Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You
should also file in this district if you are challenging the manner in
which your sentence is being executed, such as loss of good time
credits, and you are confined in one of these counties.  Habeas L.R.
2254-3(a).

     If you are challenging your conviction or sentence and you were
not convicted and sentenced in one of the above-named fifteen
counties, your petition will likely be transferred to the United
States District Court for the district in which the state court that
convicted and sentenced you is located.  If you are challenging the
execution of your sentence and you are not in prison in one of these
counties, your petition will likely be transferred to the district
court for the district that includes the institution where you are
confined.  Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A.   INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1.   What sentence are you challenging in this petition?

(a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

| Alameda County Superior Court | Alameda County |
|---|---|
| Court | Location |

(b)  Case number, if known ___145534-B___

(c)  Date and terms of sentence _1-27-05  26 years to life_

(d)  Are you now in custody serving this term?  (Custody means being in jail, on parole or probation, etc.)  Yes _X_  No ___

Where? **Folsom State Prison, P.O.Box 950, Represa CA. 95671**
            (Name of Institution)                    (Address)

2.   For what crime were you given this sentence?  (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known.  If you are challenging more than one sentence, you should file a different petition for each sentence.)

Murder & Firearm Use (Penal Code Sections 187 & 12022(a)(1)).

_____

_____

3.   Did you have any of the following?

Arraignment: Yes _X_  No ___    Preliminary Hearing: Yes _X_  No ___

Motion to Suppress:  Yes ___  No _X_ .

2

4.   How did you plead?

Guilty _____    Not Guilty __X__    Nolo Contendere _____

Any other plea (specify) _____

5.   If you went to trial, what kind of trial did you have?

Jury __X__    Judge alone _____    Judge alone on a transcript _____

6.   Did you testify at your trial?   Yes __X__   No _____

7.   Did you have an attorney at the following proceedings:

(a)  Arraignment      Yes __X__   No _____
(b)  Preliminary hearing      Yes __X__   No _____
(c)  Time of plea    Yes __X__   No _____
(d)  Trial      Yes __X__   No _____
(e)  Sentencing      Yes __X__   No _____
(f)  Appeal    Yes __X__   No _____
(g)  Other post-conviction proceeding   Yes __X__   No _____

8.   Did you appeal your conviction?    Yes __X__   No _____

(a)  If you did, to what court(s) did you appeal?

| | | | | |
|---|---|---|---|---|
| Court of Appeal | Yes __X__ No _____ | | Affirmance | 2006 |
| | | | (Year) | (Result) |
| Supreme Court of California | Yes __X__ No _____ | | 2006 | Denial |
| | | | (Year) | (Result) |
| Any other court | Yes _____ No _____ | | | |
| | | | (Year) | (Result) |

(b)  If you appealed, were the grounds the same as those that you are raising in this petition?  Yes __X__   No _____  Some were.

(c)  Was there an opinion?   Yes __X__   No _____

(d)  Did you seek permission to file a late appeal under Rule 31(a)?   Yes _____   No __X__

If you did, give the name of the court and the result:

9.   Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?   Yes __X__   No _____

3

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.   Name of Court  Alameda County Superior Court

Type of Proceeding  Habeas Corpus

Grounds raised (Be brief but specific):

a.   Same as those raised in this petition.

b.

c.

d.

Result  Denial                          Date of Result  9-25-07

II.  Name of Court  California Court of Appeal - First District

Type of Proceeding  Habeas Corpus

Grounds raised (Be brief but specific):

a.   Same as those raised in this petition.

b.

c.

d.

Result  Denial                          Date of Result  12-13-07

III. Name of Court  Supreme Court of California

Type of Proceeding  Habeas Corpus

Grounds raised (Be brief but specific):

a.   Same as those raised in this Petition.

4

b. _____

c. _____

d. _____

Result __Denial_____  Date of Result __7/16/08__

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court?    Yes ____    No __X__

_____
(Name and location of court)

B.  GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467; 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One: __See attached pages.__

_____

Supporting Facts: _____

_____

_____

Claim Two: __See attached pages.__

_____

Supporting Facts: _____

_____

_____

5

Claim Three: __See attached pages._____

Supporting Facts: _____

_____

_____

_____

    If any of these grounds was not previously presented to any other
court, state briefly which grounds were not presented and why:

_____

_____

_____

_____

    List, by name and citation only, any cases that you think are
close factually to yours so that they are an example of the error you
believe occurred in your case.  Do not discuss the holding or
reasoning of these cases:

___See attached memorandum of law._____

_____

_____

    Do you have an attorney for this petition?   Yes _____   No __X__
If you do, give the name and address of your attorney:

_____

    WHEREFORE, petitioner prays that the Court grant petitioner
relief to which s/he may be entitled in this proceeding.  I verify
under penalty of perjury that the foregoing is true and correct.

Executed on ___7/29/08___          _Elan L_____
            Date                       Signature of Petitioner

(rev. 5/96)

6

GROUND-ONE

PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE COUNSEL WAS
VIOLATED(see attached memorandum of law (amol) at 19-28).

Petitioner testified he committed the instant killing in self-def-
ense.   The decedent, Gardiner, tried to shoot Petitioner and Yarb-
orough(RT-414-28).   Defense Counsel failed to call Yarborough, who
was willing to testify and corroborate Petitioner that Gardiner did
try to shoot them, forcing them to kill Gardiner instead.   Yarbor-
ough informed Counsel of his willingness to testify as such(attached
exhibit (att.ex.) Q).   Counsel had no reasonable tactical basis for
not calling Yarborough.

GROUND TWO-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS
WAS VIOLATED(SEE amol at 29-36 ).

The defense depended upon proof Gardiner was violent, dangerous and
had attempted to shoot Petitioner.   While investigating this case,
detectives learned Gardiner had admitted committing two shootings:
one at 96th and Bancroft and one involving a victim named "Leo"(CT-
594-95).   Defense Counsel requested disclosure of any information
related to the shootings(PTRT[prior trial reporter's transcript]-
104,109-11,34,150-52).   The prosecution failed to (1) disclose in-
formation on the Bancroft shooting until after Petitioner was con-
victed and when confronted with a news article about the shooting
(RT-750,754-55), and (2) disclose information on another area
shooting which detectives on this case had investigated and should
have remembered(RT-753-54; att.ex. I-1-7).   Evidence strongly in-
dicated Gardiner was a Bancroft shooter, including his resume at
the crime scene(att.ex. C-1-2).   The information about Gardiner
shooting Leo proved true(att.ex. J; RT-615-22,624[police report
and testimony regarding Gardiner's shooting of Leo Logwood]).   It
is reasonably probable use of the evidence at trial would have led
to acquittal.

GROUND THREE-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO DUE
PROCESS WAS VIOLATED(SEE amol at 37-39 ).

6a

• The failure to disclose the Bancroft and Logwood shooting information
violated Petitioner's "Brady" rights at the preliminary hearing.
The defense received the Logwood information after Petitioner was
held to answer(PTRT-103-06,135-36). Investigators had information
Gardiner had admitted shooting a "Leo" on "51st Avenue"(CT-594-95).
As it turns out, investigators had worked the Logwood case, which
occurred at 5040 International Boulevard, just four days before the
instant shooting(att.ex. J-1,4,6). The investigators either did or
should have realized the Logwood shooting was the one referred to.
Moreover, a simple computer check would have turned up the unsolved
area shooting involving a "Leo." Investigators knew this case pos-
sibly involved self-defense(see RT-339,341-42) and thus knew the
potential importance of Gardiner having shot someone. There is a
reasonable probability the shootings would have precluded a probable
cause finding of murder(see RT-624[evidence proving gun Gardiner
• used in this case was used by Gardiner to shoot Logwood]).

• GROUND FOUR-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS
WAS VIOLATED(see amol at 40-42 ).

The prosecutor never revealed the full extent of the investigation
in the Bancroft shooting or all the evidence implicating Gardiner.
That information was suppressed or destroyed. Circumstances sug-
gest further investigation would have been done to identify the
Bancroft shooter. It is unlikely police ceased investigation so
quickly (two days according to the prosecutor in this case-RT-756)
before identifying the man who'd shot Mike Hall and likely precip-
itated the shooting of two women(RT-756-58; att.ex. B-1-3). It
is likely police (1) investigated Gardiner, whose resume was found
in the car from which shots were fired(att.ex. C-1-2); (2) attempted
to or did locate and question Jasmine Robbins who was present and
fled with the shooter after the incident(att.ex. G-5-6; att.ex. B-
1); (3) attempted to or did identify the car's owner (likely the
shooter or Robbins). The car was impounded(att.ex. C-1 & H-1); or
(4) showed Gardiner's photo to witnesses.
The prosecutor in this case indicated the shell casings and bullet
fragment evidence and resume collected(att.ex. F-1-2; G-5) were

6b

•   lost or destroyed(RT-766,756-57; att.ex. G-8). This, too, was done
    in bad faith. Ballistics tests could have connected Gardiner's gun
•   to that evidence.
    In the alternative, after being apprised of the relevance of the
    Bancroft case to this case, investigators failed, in negligence or
    bad faith, to investigate, locate, and preserve information and ev-
    idence implicating Gardiner. Particularly in light of Gardiner's
    admission and resume, investigators should have taken the above-
    mentioned steps to determine if Gardiner had committed the Bancroft
    shooting.

    GROUND FIVE-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE
    COUNSEL WAS VIOLATED(see amol at 43-47 ).

    Counsel failed to conduct a sufficient independent investigation
•   to locate Bancroft shooting witnesses he knew might aid the defense.
    Counsel knew that Gardiner had admitted to shooting someone at Ban-
•   croft and that the shooting got media coverage(CT-594-95). Counsel
    failed to locate a newspaper article on the shooting until after
    Petitioner was convicted(RT-750; CT-959). Earlier discovery of the
    article would have dislodged the police report from the prosecutor
    earlier. The reports identified victims and witnesses(att.exs. B-
    1-3,D,E,G). Even without the reports, Counsel could have, but fail-
    ed to, locate those witnesses involved or neighborhood witnesses
    who could identify those involved. Evidence demonstrated many
    people were aware of the shooting(CT-594-95). Counsel failed to
    contact media outlets to determine if any witnesses or involved
    parties had been interviewed or identified. Counsel did not utilize
    information provided by Petitioner to locate Bancroft victim Mike
    Hall! Petitioner informed Counsel that a victim's name was "Mike,"
    that he was from Oakland on Seminary Avenue and was on probation(see
    RT-718,743). Indeed, a check at the local probation office would
    have revealed Hall's probation was violated because of the Bancroft
    incident(RT-756-57).

•   GROUND SIX-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS
    AND COMPULSORY PROCESS AND EFFECTIVE COUNSEL WERE VIOLATED(see amol

                                    6c

°      at 48-49 ).

·      The Trial Court received Gardiner's prison file(PTRT-114) and a rep-
       ort of his "physical altercation" with another prisoner(id at 115).
       The Trial Court denied Counsel's request for information to contact
       the prisoner(PTRT-115-17).  The Trial Court relied solely on Gar-
       diner's self-serving statement at the time that he was not the agg-
       ressor in that incident(id at 118).  If located, the prisoner could
       have established Gardiner was the aggressor and thus had a pattern
       of violent behavior.  The Trial Court hampered Counsel's ability to
       investigate potentially exculpatory information.

       GROUND SEVEN-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PRO-
       CESS WAS VIOLATED(see amo1 at 50-51 ).

·      The prosecution suppressed a police diagram indicating police found
       Gardiner's gun near his body.  Instead, testimony,photographs and
       a latter drawn diagram(att.ex. O) were presented to prove the gun
       was found feet away from Gardiner(RT-89-98,114-17;331-32).  However,
       reports and testimony indicate the gun and Gardiner were in "very
       close proximity"(RT-330; att.ex. P-1).  Also, the position of the
       gun suggests it was placed further away before being photographed
       rather than dropped there by Gardiner(RT-230-31).  The gun position
       was relevant to whether Gardiner was armed when killed.  The pros-
       ecutor argued Gardiner's alleged distance from the gun proved he
       was not(RT-599-600,653,657,693,697-98).

       GROUND EIGHT-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO EFFEC-
       TIVE COUNSEL WAS VIOLATED BY INADEQUATE CROSS-EXAMINATION AND IM-
       PEACHMENT(see amo1 at 52-57 ).

       Juan Rodriguez's was the only testimony to contradict Petitioner's.
       The prosecutor relied on it to argue Petitioner came back and
       fired a shot at an already disabled Gardiner(RT-180,196-97,655).
       Counsel failed to show through questioning that Rodriguez's incon-
·      sistent statements were not innocent but rather proved he had not
·      seen the shooting but was lying to placate the prosecutor and pro-

                                    6d

•    tect his family.  Rodriguez was fearful and tried to prevent police
from talking to his daughter(RT-535; PTRT-511,549; RT-187,172-73).
• However, he had indicated his wife and/or child, rather than he,
had seen the shooting(RT-550,527,533,189).  Counsel failed to ask
Rodriguez why he identified Yarborough at the preliminary hearing
as the shooter(RT-204) but at trial fingered the man identified as
Petitioner.  Counsel failed to elicit (1) that Yarborough was a
defendant at the preliminary hearing and (2) that prosecution evi-
dence at the time indicated Yarborough was the only shooter(CT-160-
69,204,195-96,222-26).  Such would have suggested Rodriguez was
tailoring his testimony to prosecutor evidence.

Counsel did not elicit that Rodriguez had little or no difficulty
understanding questions at the preliminary hearing and identified
Yarborough several times(CT-18-141; CT-29,20-21,34-35,68-69,79,84-
85).  Such would have rebutted prosecution suggestion Rodriguez's
• flip-flop resulted from a language barrier(RT-204-05).

Counsel failed (1) to ask Rodriguez why he did not give the "walk
• away, come back" testimony when questioned previously; (2) to im-
peach Rodriguez with his prior testimony there was no walking away
and coming back; (3) to elicit that the prosecutor blatantly led
Rodriguez into giving the "walking away, coming back" testimony(PT
RT-497); (4) to impeach Rodriguez with his prior inconsistent
statement he had not seen a muzzle flash from the gun(compare RT-
180 with CT-113,34-36,41-42,18-26,33-36,86-91); (5) to impeach
Rodriguez with his prior "identification" of Petitioner at the pre-
liminary hearing(CT-20-21; compare RT-192[Rodriguez testifying at
trial he could not identify Petitioner]); (6) to impeach Rodriguez
with his prior testimony he saw a body or "shadow" falling(PTRT-
527-28,491; compare RT-174-75[Rodriguez testifying at current trial
he did not see a third person and thought the gunman was shooting
a tire]; see amol at 52-56A).

GROUND NINE-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PRO-
CESS WAS VIOLATED BY THE USE OF PERJURED TESTIMONY(see amol at 58-
64 ).

• Substantial evidence demonstrated Rodriguez's testimony was perjured,

6e

that he did not see the shooting, and that his testimony was intended
to appease the prosecutor so his family would not be called to test-
ify. That evidence included (1) his own admission he did not see
the shooting(RT-189); (2) his inability to identify Petitioner and
Yarborough in photo lineups(RT-204; CT-131-32) and his identification
of someone who was not involved(RT-201-02); (3) Rodriguez's wildly
inconsistent and otherwise unexplainable reversals about what he all-
egedly saw(as set out in Ground eight; see amol at 52-56A ); and (4)
physical evidence and expert testimony demonstrating none of Gardi-
ner's wounds could have been inflicted in the way Rodriguez test-
ified(RT-88,179,196-97[Rodriguez testimony]; RT-315-17,322,70-72
[expert testimony]). Finally, there was the nature and timing of
Rodriguez's reversals, which always conformed to the prosecutor's
shifting proof needs(see attached memorandum at 52-56A ).

GROUND TEN-PETITIONER'S FEDERAL CONSTITUTIONAL DUE PROCESS RIGHTS
WERE VIOLATED BY HIS CONVICTION BASED ON INSUFFICIENT EVIDENCE(see
amol at 65-76 ).

There was insufficient evidence (1) to disprove self-defense or
(2) prove premeditation and deliberation(see amol at 73     ). Pet-
itioner's testimony that he and Yarborough shot an armed, violent
and threatening Gardiner in order to protect themselves established
self-defense as a matter of law(RT-415-30). Lakeisha Jackson's
eyewitness testimony corroborated Petitioner's testimony that he
and Gardiner struggled over Gardiner's gun before the shooting(RT-
424-27[Petitioner's testimony]; RT-248,252,341[Jackson's testimony])
and that Yarborough's shooting failed to stop the fight(RT-426-27,
430[Petitioner's testimony]; RT-216-17,221,246,248[Jackson's test-
imony]). Physical evidence demonstrated two guns were fired at
Gardiner from "all different directions"(RT-76,68-69,291,313), a
fact consistent with Gardiner being shot during a struggle(RT-560).
Powder burn evidence corroborated Petitioner as to which wounds he
inflicted up close and which Yarborough inflicted from a distance
(RT-424,428-36[Petitioner's testimony]; RT-70-72,80[Coroner's ex-
pert testimony]; att.ex. A-7-8[Coroner's report]).
Autopsy, shell casing and other physical evidence corroborated,

- rather than disproved, Petitioner's testimony Gardiner was up and
  struggling rather than down and disabled when the bullet wounds were
  inflicted(see amol at 71,73-75). Expert testimony confirmed Gardiner
  could have continued to be a threat and attempted to shoot Petitioner
  after having been shot(RT-555-56,575,79-81; see amol at 68     ).
  Evidence was consistent with Petitioner's testimony Gardiner either
  had his gun or Petitioner reasonably believed he did, when Petition-
  er was forced to finally kill him(RT-508,512,830).   Evidence was
  insufficent to disprove Petitioner actually believed it was neces-
  sary to kill in self-defense either reasonably or unreasonably.
  Evidence showed Gardiner was dangerous, violent, and thus likely to
  have attempted to shoot Petitioner and Yarborough.   He angrily
  intended to confront the men while armed with a fully loaded nine
  millimeter weapon(RT-110-11,119-20,155-59;140-42) Gardiner had used
  to shoot Leo Logwood just four days before(RT-157,539,618-19,624).
- Evidence demonstrated the reasons motivating Gardiner's violent
  conduct in this case also motivated him to shoot Logwood(RT-616,
  417-19).   There was no evidence Petitioner was motivated by any-
  thing other than self-defense to shoot Gardiner(see amol at 72     ).

GROUND ELEVEN-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO JURY
TRIAL, DUE PROCESS AND EFFECTIVE COUNSEL WERE VIOLATED(see amol at
77-82  ).

Absence of self-defense is an element of murder(CALJIC no. 5.15).
The jury was instructed that self-defense is not available to one
who initiates an assault unless he tries to stop fighting and in-
forms his opponent he wants to, and has, stopped fighting(CT-876;
CALJIC no. 5.54).   The Trial Court failed to instruct that an
aggressor need not withdraw and may defend himself if his opponent's
response is unreasonable and excessive and allows no opportunity
to withdraw(see amol at 77-78 ).   Counsel failed to request such
instruction.   There was evidence Petitioner, suspecting Gardiner
was threatening Yarborough, spun Gardiner around (i.e. simple
assault) after which Gardiner unreasonably tried to shoot Petit-
ioner.   Petitioner had no opportunity to withdraw and Gardiner was
subsequently shot(RT-422-29,493).   Given the instructional omission,

6g

the jury might have concluded Petitioner lost the right to defend
by grabbing Gardiner and failing to withdraw(see amol at 79  ).

GROUND TWELVE-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO JURY
TRIAL, DUE PROCESS AND EFFECTIVE COUNSEL WERE VIOLATED(see amol at
83-84 ).

The instructional omission addressed in Ground eleven may have fore-
closed an unreasonable self-defense manslaughter verdict as well.
The jury was instructed that such a verdict is denied one who "cre-
ated the circumstances which legally justified" his adversary's
attack(CT-868; CALJIC no. 5.17).  5.17 incorporates the rule an
adversary's unreasonable response restores the initial agressor's
right to self-defense(see amol at 77-78 ).  The error could have led
the jury to conclude Petitioner's inability to withdraw foreclosed
a manslaughter verdict(id at 83-84 ).

GROUND THIRTEEN-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO DUE
PROCESS AND JURY TRIAL WERE VIOLATED.  COUNSEL WAS INEFFECTIVE IN
VIOLATION OF THE SIXTH AMENDMENT(see attached mol at 85-88 ).

The instructional omission in Ground eleven infected the mutual
combat instructions.  The jury was instructed a mutual combatant
is denied the right of self-defense unless he tried to stop fight-
ing, informed his opponent he has done so, and gave his opponent
and opportunity to do so(CT-879; CALJIC no. 5.56).  For the above
reasons(Grounds 11 & 12), the error and the evidence of an extended
struggle and failure to withdraw may have unjustifiably foreclosed
a self-defense acquittal(see amol at  79   ).  Trial Counsel failed
to request the proper instruction.

GROUND FOURTEEN-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO JURY
TRIAL, DUE PROCESS AND COMPULSORY PROCESS WERE VIOLATED(see amol at
89-93 ).

The Trial Court denied Petitioner's request for an instruction all-
owing the jury to rely on evidence of the decedent's prior violent

6h

acts to prove he attacked Petitioner in this case(RT-626; CT-795
[text of rejected instruction]). The other self-defense instructions
did not address the issue(CT-863-78). The instruction was required
by state law and its omission lowered the prosecution's burden of
proof.

GROUND FIFTEEN-THE SIXTH AMENDMENT WAS VIOLATED WHEN PETITIONER WAS
CONSTRUCTIVELY DENIED COUNSEL AND HIS ATTORNEY HAD AN ACTUAL CONFLICT
OF INTEREST(see amol 94-101 ).

Trial Counsel Pyle had a conflict of interest at Petitioner's
"Marsden" hearing and during post-trial proceedings. Petitioner
sought (1) to have Counsel removed for his deficient performance and
(2) to have new counsel appointed to file a motion for new trial
based on Pyle's ineffectiveness(RT-709,709-49). Among other fail-
ings, Pyle (1) failed to interview Movita Patterson, an exculpatory
witness(RT-730-31,734-35); (2) failed to obtain an exculpatory
police diagram(RT-721,719,724); (3) failed to locate and call Ban-
croft shooting witnesses(RT-743[Ground five]; see att.ex. T); (4)
failed to call Romeo Yarborough to testify(see Ground one); (5) fail-
ed to timely authorize defense investigation(RT-710-11).
To prevent his removal and to avoid providing proof of his ineffec-
tiveness, Pyle feigned loss of memory to conceal his ineffectiveness
(RT-719-21,715-18,720,729-31). Pyle otherwise mislead the Court
on the matter. As a result, the "Marsden" motion was denied(RT-749).
Due to his conflict, Counsel also failed to raise claims of inef-
fectiveness or to locate witnesses for the new trial motion. Pet-
itioner was forced to represent himself at the "Marsden" hearing.

GROUND SIXTEEN-PETITIONER"S FEDERAL CONSTITUTIONAL RIGHT TO EFF-
ECTIVE APPELLATE COUNSEL WAS VIOLATED(see amol at 102-105).

Appellate Counsel failed to raise the claims in this petition
on direct appeal. There was no reasonable basis for the failure
to do so.

GROUND SEVENTEEN-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO
EFFECTIVE COUNSEL, DUE PROCESS, AND COMPULSORY PROCESS WERE VIOLATED.

Counsel failed (1) to move for a continuance until after Romeo Yar-
borough was sentenced (see ground one); (2) to assure that Yarbor-
ough would testify for the defense after he was sentenced; (3) to
seek charging and sentencing immunity related to the fact and con-
tent of Yarborough's testimony. The above actions would have re-
moved the below obstacles to Yarborough testifying for the defense.

Compulsory and Due Process were violated when (1) the prosecutor
and/or Yarborough's attorney (a state-employed public defender PTRT-
page 1) requested, and the trial court granted, continuances for
over a year to delay Yarborough's sentencing until after Petitioner's
trial(CT-688,1012); (2) the attorney advised Yarborough not to test-
ify before being sentenced and that his testimony might affect his
sentencing; and (3) the prosecutor told Yarborough and/or his att-
orney that testifying would or might affect Yarborough's sentence.
The foregoing was intended to intimidate, and actually intimidated,
Yarborough into not testifying for the defense.

GROUND EIGHTEEN-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO DUE
PROCESS, IMPARTIAL JURY, JURY TRIAL, EQUAL PROTECTION, AND EFFECTIVE
COUNSEL WERE VIOLATED.

Petitioner's rights were violated by the presence of biased jurors
on the panel. Trial Counsel failed to challenge bias jurors and to
adequately question jurors to uncover bias. The prosecutor used
peremptory challenges to exclude black and minority jurors.
Trial Counsel failed to object on the basis of "Batson-v-Kentucky."
Appellate Counsel failed (1) to challenge the juror panel as biased
or to raise the prosecutor's "Batson" violations, or (2) to order
preparation of the voir dire transcript and juror questionnaires
to investigate possible bias and "Batson" claims.

GROUND NINETEEN-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS TO DUE

6j

PROCESS AND EQUAL PROTECTION WERE VIOLATED.

Petitioner filed with the Alameda County Superior Court a habeas petition alleging errors in jury selection and an accompanying motion for preparation and provision of the transcript of the jury voir dire and the completed jury questionnaires. The transcripts and questionnaires were needed by Petitioner to prove his claims in the habeas petition. The Superior Court denied the motion and the petition.(see attached exhibit V)

GROUND TWENTY-PETITIONER'S FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE COUNSEL WAS VIOLATED.

Prosecution witness Rodriguez testified he heard several shots then saw Petitioner walk away from a disabled Gardiner, walk back, and fire one last shot near Gardiner(RT-173,180,196-97). This was the sole evidence contradicting Petitioner's self-defense testimony. The prosecutor relied on it to argue premeditation and deliberation (RT-655). Defense Counsel failed to interview and call to testify Felix Segura to contradict Rodriguez. Segura would have testified he heard two guns (one louder than the other) being fired on the night of the shooting. The shots were in such rapid succession as to preclude anyone from having fired, walked away, come back and fired again. Segura did not see anyone running away. He came out of his house afterwards and saw Gardiner's body. Segura's testimony would have corroborated Petitioner's testimony the last shots were fired in rapid succession in self-defense(RT-424,428,436).

(See Declaration of Felix Segura attached hereto as Exhibit W).

6k

# EXHIBIT-W

DECLARATION OF FELIX SEGURA

I, Felix Segura, hereby declare as follows:

1. On December 5, 2002, I witnessed certain occurrences relating to the shooting of Noble Gardiner. That shooting occurred on the street outside my house.

2. On that night, while in my home, I heard shots being fired out-side. It sounded like two guns were being fired, one louder than the other. The shots were fired in rapid succession and without any substantial pause between them. No one could have shot, walked away, come back and shot again.

3. When I looked out my window after the shooting, I saw someone running away. I was unable to tell who the runners were or what their race was. I also saw a black woman come out of a house, get in a car and drive away.

4. After the shooting, I saw that a person was laying on the side-walk. I went outside and saw he was bleeding, which prompted me to call 911. I spoke to an officer that night at the scene.

5. Some days later, I was interviewed by Oakland Police Sergeant Longmire. I told him about the two people who walked by my house 2-3 days after the shooting.

6. I was also interviewed by a man and a woman who I believed

1

were working with the defense. I told them I did not see who fired
the guns.

7. If it is necessary, I am willing to testify as to the contents
of this declaration and on any other relevant matters.

    I, Felix Segura, swear under penalty of perjury that the
foregoing is true and correct. Executed this  _4_  , day of
_2_ , 2008 at _1555 52 ave  oakland  Ca  94601_
    (month)                    (address)

_Felix Segura_
        Declarant

2

# PROOF OF SERVICE BY MAIL

I  Elnorris Stone          , AM A RESIDENT OF FOLSOM STATE PRISON IN THE
COUNTY OF SACRAMENTO, STATE OF CALIFORNIA.  I AM OVER THE AGE OF 18 YEARS,
AND I AM /AM NOT A  PARTY TO THIS ACTION.
MY PRISON NUMBER IS: V67067
MY PRISON ADDRESS IS; **P.O. BOX 950, Folsom, Ca. 95763**


ON  Ju ly  29 t H        , 2008, I SERVED A COPY OF THE FOLLOWING
DOCUMENT: Habeas Corpus with attached Memorandum of points and
authorities in support of Petition for Habeas Corpus,Prisoner's
Application to proceed In Forma Pauperis, Notice of Motion &
Motion for Directed NUNC PRO TUNC And Proposed Order.


ON THE FOLLOWING PARTIES BY PLACING THE DOCUMENTS IN A SEALED
ENVELOPE WITH POSTAGE FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT
BOX SO PROVIDED AT FOLSOM STATE PRISON (MAILBOX RULE), FOLSOM,
CALIFORNIA, ADDRESSED AS FOLLOWS: U.S. District Court
                                   Northern District of California
                                   450 Golden Gate Ave.
                                   San Francisco, California 94102

Attorney General
Jerry Brown
1300 I St. Suite 125
Sacramento, CA. 95814


THERE IS DELIVERY SERVICE BY THE UNITED STATES MAIL AT THE PLACE SO
ADDRESSED, AND/OR THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE
PLACE OF MAILING AND THE PLACE SO ADDRESSED.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.


EXECUTED  July  29 tH     , 2008, AT FOLSOM, CALIFORNIA..

**ORIGINAL**

ELNORRIS STONE
#V67067
FOLSOM STATE PRISON
P.O. BOX 950
FOLSOM, CA. 95763

7/29/08

COURT CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVE.
SAN FRANCISCO, CA 94102

        RE: Case # CV 07 6263 TEH (PR)

Dear Court Clerk,

 May God bless you.

        Please notice & find enclosed the following documents:
Original copy of Petition for Habeas Corpus, Proof of service,
Attatched Memorandum of Points and Authorities in support of Petition
for Habeas Corpus, Proof of service, Application to proceed In Forma
Pauperis, Notice of Motion & Motion for Directed Nunc Pro Tunc,
Proposed Order & Declaration.

        I am asking the following:
° The date of the original Petition -filed Dec. 6, 2007- reflect
on this new filing.
° Please give me a conformed copy of the above mentioned documents.
° Please give me leave to complete my In Forma Pauperis affidavit,
being that timeliness is at issue & I have requested a new certification
from prison authorities (see enclosed request accompaning IFP).
° Let my letter be construed as my consent for a magistrate Judge
in this issue.

page 1 of 2

Thank you for your time and attention in this matter.

Sincerely in Christ,

Elnorris Stone

//

//

//

# PROOF OF SERVICE BY MAIL

I Elnorris Stone , AM A RESIDENT OF FOLSOM STATE PRISON IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA. I AM OVER THE AGE OF 18 YEARS, AND I AM /A̶M̶ ̶N̶O̶T̶ A PARTY TO THIS ACTION.
MY PRISON NUMBER IS: V67067
MY PRISON ADDRESS IS: **P.O. BOX 950, Folsom, Ca. 95763**

ON   July   29   , 2008, I SERVED A COPY OF THE FOLLOWING
DOCUMENT: Notice of Motion & Motion for Directed NUNC PRO TUNC, Denial of Habeas Corpus in The CA. Supreme Court, & Proposed Order for Directed NUN PRO TUNC.

ON THE FOLLOWING PARTIES BY PLACING THE DOCUMENTS IN A SEALED ENVELOPE WITH POSTAGE FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT FOLSOM STATE PRISON (MAILBOX RULE), FOLSOM, CALIFORNIA, ADDRESSED AS FOLLOWS: U.S. District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, California 94102

Attorney General
Jerry Brown
1300 I St. Suite 125
Sacramento, CA. 95814

THERE IS DELIVERY SERVICE BY THE UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND/OR THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED   July 29   , 2008, AT FOLSOM, CALIFORNIA..